**SO ORDERED.**

**DONE and SIGNED February 14, 2025.**



_____
**JOHN S. HODGE**
**UNITED STATES BANKRUPTCY JUDGE**

---

### In the United States Bankruptcy Court
### Western District of Louisiana Shreveport Division

| | | |
|---|---|---|
| **In the Matter Of**: | } | |
| | } | Case No. 24-10178 |
| Gulf South Energy Services, LLC | } | |
| | } | Chapter 11 |
| **Debtor** | } | |

### Findings of Fact, Conclusions of Law, and Order Confirming Debtor's
### Modified Plan of Reorganization Dated February 13, 2025

John S. Hodge, United States Bankruptcy Judge

**THIS MATTER** came before the Court for an evidentiary hearing on January 22, 2025 (the "Confirmation Hearing") to consider confirmation of the Debtor's Plan of Reorganization (Docket No. 269).

All objections to the Plan were resolved or withdrawn prior to the hearing except for the objection filed by the United States Trustee which objected to § 6.10 of the Plan entitled "Temporary and Conditional Stay of Certain Actions against Todd Davis and Dayton Porter & Tolling of Temporarily and Conditionally Stayed Claims."

After considering the law and evidence, on January 30, 2024, the Court, by separate order (Docket No. 275), decreed that:

1. The Objection of the United States Trustee (Docket No. 252) is sustained; and

2. The court will confirm the plan if the Debtor removes § 6.10 of the Plan in its entirety. Within 14 days of the entry of this order, the Debtor should: a) file a modified plan that deletes § 6.10 and b) upload a proposed confirmation order along with findings of fact and conclusions of law.

## Findings and Conclusions

The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052, made applicable to this proceeding pursuant to Fed. R. Bankr. P. 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

## Jurisdiction and Venue

A. On February 16, 2024 (the "Petition Date"), the Debtor commenced this case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code").

B. This Court has jurisdiction over the Debtor and the subject matter of the confirmation hearing pursuant 28 U.S.C. § 1334(a). This Court has authority over the confirmation hearing pursuant 28 U.S.C. § 157(b)(2)(L).The confirmation hearing is a core proceeding pursuant to 28 U.S.C. § 157(b)(1) and (2)(L). Venue of the Chapter 11 Case in this District is proper pursuant to 28 U.S.C. § 1408. This Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed, and this Court's exercise of such jurisdiction to enter a final order with respect thereto is proper in all respects.

C. No statutory committees have been appointed in this case.

## Voting and Consent to Modification

D. Votes to accept or reject the Plan have been solicited with proper and sufficient notice and tabulated fairly, in good faith, and in a manner consistent with the Bankruptcy Code, the Bankruptcy Rules and, as applicable, the local rules.

E. All creditors were provided with proper and sufficient notice of the Debtor's Plan of Reorganization dated August 14, 2024 and Debtor's Modified Plan of Reorganization Dated November 15, 2024 (the "Plan").

F. All objections to the Plan were resolved or withdrawn prior to the hearing except for the objection filed by the United States Trustee which objected to § 6.10 of the Plan entitled "Temporary and Conditional Stay of Certain Actions against Todd Davis and Dayton Porter

& Tolling of Temporarily and Conditionally Stayed Claims" that was sustained (Docket No. 275).

### Burden of Proof

G. The Plan Proponent has the burden of proving the elements of Section 1129(a) (and if applicable, Section 1129(b)) of the Bankruptcy Code by a preponderance of the evidence and it has met that burden as further found and determined herein.

### Compliance with Sections 1122, 1123 and 1129 of the Bankruptcy Code

H. Section 1129(a)(1) – Plan's Compliance with the Bankruptcy Code. The Plan complies with all applicable provisions of the Bankruptcy Code as required by Section 1129(a)(1) of the Bankruptcy Code, including, without limitation, Sections 1122 and 1123 of the Bankruptcy Code.

I. Sections 1122(a) and 1123(a)(1)-(4). The Plan satisfies Sections 1122(a) and 1123(a)(1) of the Bankruptcy Code by designating separate Classes of Claims, and each of which contains Claims that are substantially similar to the other Claims within that Class. The Plan satisfies Sections 1123(a)(2) through (4) of the Bankruptcy Code by specifying the treatment of each Class that is impaired, and by providing the same treatment for each Claim within a particular Class.

J. Section 1123(a)(5). The Plan and various documents set forth therein provide adequate means for the Plan's implementation, including, inter alia: (i) the property of the estate vesting in the Reorganized Debtor, (ii) the Reorganized Debtor continuing to operate its business following the Effective Date, (iii) the Reorganized Debtor being required to timely fund and transfer payments authorized under this Plan to recipients, and (iv) paying the United States Trustee quarterly fees incurred pursuant to 28 U.S.C. § 1930(a)(6). Accordingly, the Plan satisfies Section 1123(a)(5) of the Bankruptcy Code.

K. Sections 1123(a)(6) – (a)(8). Pursuant to Section 1123(a)(6) of the Bankruptcy Code, the charter of the Reorganized Debtor prohibits the issuance of nonvoting equity securities. The Plan satisfies Section 1123(a)(7) of the Bankruptcy Code because its provisions are consistent with the interests of creditors and equity security holders and with public policy regarding the manner of selection of any officer, director, managing member or trustee under the Plan and any successor to such officer, director, managing member or trustee.

L. Section 1123(a)(8) does not apply because the Debtor is not an individual.

M. Section 1123(b). The provisions of the Plan comply with, and are not inconsistent with, the applicable provisions of the Bankruptcy Code, including Section 1123(b). Among other items, the Plan identifies and impairs, or, as applicable, leaves unimpaired, each Class of Claims pursuant to Section 1123(b)(1), and it provides, pursuant to Section 1123(b)(2), for the assumption and assignment, or rejection, of the Debtor's previously unrejected

executory contracts and unexpired leases. Pursuant to Section 1123(b)(6) of the Bankruptcy Code, the Plan contains other customary provisions that are consistent with the Bankruptcy Code, including: (i) provisions governing Distributions on account of Allowed Claims; (ii) procedures for resolving Disputed Claims; (iii) provisions regarding the modification of the Plan; and (iv) provisions for the retention of jurisdiction by this Court with respect to certain matters listed in Article XI of the Plan. The failure to specifically address a provision of the Bankruptcy Code in this Confirmation Order does not diminish or impair the effectiveness of this Confirmation Order.

N. <u>Bankruptcy Rule 3016(a)</u>. The Plan is dated and identifies the entity submitting the Plan as the Plan Proponent, thereby satisfying Bankruptcy Rule 3016(a).

O. <u>Section 1129(a)(2) – Plan Proponent's Compliance with the Bankruptcy Code</u>. The Plan Proponent has complied with the applicable provisions of the Bankruptcy Code. The Plan Proponent is the appropriate entity to propose the Plan and has solicited acceptances of the Plan in accordance with the requirements of Section 1125 of the Bankruptcy Code, the Bankruptcy Rules, and, as applicable, the Local Rules.

P. <u>Section 1129(a)(3) – Plan Proposed in Good Faith</u>. The Plan Proponent has proposed and solicited the Plan in good faith and not through any means prohibited by law. The Plan is the result of extensive, good-faith, arm's-length negotiations between the Plan Proponent and the Claim Holders and, as evidenced by strong creditor support for the Plan, achieves the goals broadly embodied in the Bankruptcy Code. Therefore, the Plan complies with Section 1129(a)(3) of the Bankruptcy Code.

Q. <u>Section 1129(a)(4) – Payment for Services</u>. Any payment made or to be made by the Debtor for services or for costs and expenses in connection with this Chapter 11 case, or in connection with the Plan and incidental to the Chapter 11 case, has been approved by the Court or is subject to the Court's approval as reasonable, thereby satisfying Section 1129(a)(4) of the Bankruptcy Code.

R. <u>Section 1129(a)(5) – Identity of Management</u>. In accordance with Section 1123(b)(3)(B) of the Bankruptcy Code, the Proponent sufficiently identified the management of the Reorganized Debtor. Therefore, the Plan complies with Section 1129(a)(5) of the Bankruptcy Code..

S. <u>Section 1129(a)(6) – No Rate Changes</u>. The Plan does not involve the establishment of rates over which any regulatory commission has or will have jurisdiction after confirmation. Therefore, Section 1129(a)(6) of the Bankruptcy Code does not apply to the Plan.

T. <u>Section 1129(a)(7) – Best Interests of Creditors</u>. With respect to each impaired Class of Claims, each Holder in such Class has either accepted the Plan or will receive or retain, under the Plan, property of a value, as of the Effective Date, that is not less than the amount

such Holder would receive or retain if the Debtor were liquidated on the Effective Date under Chapter 7 of the Bankruptcy Code. Therefore, the Plan complies with Section 1129(a)(7) of the Bankruptcy Code.

U.  Section 1129(a)(8) – Acceptance by Certain Classes. The following Classes are impaired and, as indicated in the Ballot Summary at Docket No. 264, have accepted the Plan because, pursuant to Section 1126(c) of the Bankruptcy Code, more than one-half (1/2) of the number and at least two-thirds (2/3) of the dollar amount actually voting have accepted the Plan: Class 7 (b1BANK), Class 8 (Bank of Brenham), Class 11 (De Lage Landen Financial), Class 12 (De Lage Landen Financial), Class 13 (De Lage Landen Financial), Class 14 (TXP Capital), Class 15 (TXP Capital), Class 16 (Holders of General Unsecured Claims), Class 17 (Equity Interest Holders), Class 18 (NFS Leasing) and Class 20 (PCEC Shack, LLC). Class 7, Class 8, Class 11, Class 12, Class 13, Class 14, Class 15, Class 16, Class 17, Class 18 and Class 20 are impaired under the Plan. Therefore, the Plan is confirmable because it satisfies Section 1129(b)(1) of the Bankruptcy Code.

V.  Section 1129(a)(9) – Treatment of Administrative Claims and Other Priority Claims. The treatment of Administrative Claims and Other Priority Claims pursuant to the Plan satisfies the requirements of Sections 1129(a)(9)(A) and (B) of the Bankruptcy Code.

W.  Section 1129(a)(10) – Acceptance by One Impaired Class. The Plan has been accepted by Class 7, Class 8, Class 11, Class 12, Class 13, Class 14, Class 15, Class 16, Class 17, Class 18 and Class 20, each of which is impaired under the Plan. Because at least one impaired Class of Claims has accepted the Plan, excluding any acceptance of the Plan by an insider, the Plan satisfies the requirements of Section 1129(a)(10) of the Bankruptcy Code.

X.  Section 1129(a)(11) – Feasibility. Confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Debtor or any successor of the Debtor under the Plan. Therefore, the Plan complies with Section 1129(a)(11) of the Bankruptcy Code.

Y.  Section 1129(a)(12) – Payment of Fees. All fees payable under 28 U.S.C. § 1930 will be paid on or before their due date. Therefore, the Plan complies with Section 1129(a)(12) of the Bankruptcy Code.

Z.  Section 1129(a)(13) – Retiree Benefits. The Debtor does not sponsor or provide any retiree benefit plans within the meaning of Section 1114 of the Bankruptcy Code. Accordingly, Section 1129(a)(13) of the Bankruptcy Code is not applicable to the Plan.

AA.  Section 1129(a)(14) – Domestic Support Obligations. The Debtor is not required to pay any domestic support obligations. Accordingly, Section 1129(a)(14) of the Bankruptcy Code is not applicable to the Plan.

BB.     Section 1129(a)(15) – Debtor is Not an Individual. The Debtor is not an individual. Accordingly, Section 1129(a)(15) of the Bankruptcy Code is not applicable to the Plan.

CC.     Section 1129(a)(16) – Transfers. The Debtor is a moneyed, business, or commercial corporation or trust; therefore, Section 1129(a)(16) of the Bankruptcy Code is not applicable to the Plan..

DD.     Section 1129(b) – Cramdown. This Court, having considered the evidence presented at the Confirmation Hearing by the Plan Proponent, confirms the Plan under Section 1129(b) of the Bankruptcy Code notwithstanding the lack of votes for or against the Plan by Class 1 (U.S. Small Business Administration), Class 2 (Ally Financial), Class 3 (Ally Financial), Class 4 (Ally Financial), Class 5 (Ally Financial), Class 6 (b1BANK), Class 9 (Chrysler Financial), Class 10 (Chrysler Financial), Class 21 (Global Merchant Cash, Inc.). The Plan does not unfairly discriminate against, and is fair and equitable with respect to, the Holders of Claims in Classes 1, 2, 3, 4, 5, 6, 9, 10 and 21.

EE.     Section 1129(c) – Only One Plan. The Plan is the only plan confirmed in this Chapter 11 case; therefore, the Plan and this Confirmation Order comply with Section 1129(c) of the Bankruptcy Code.

FF.     Section 1129(d) – Principal Purpose of Plan. The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of Section 5 of the Securities Act of 1933, as amended. Therefore, the Plan complies with Section 1129(d) of the Bankruptcy Code.

GG.     Section 1129(e) – Small Business Case. This Chapter 11 case is not a small business case within the meaning of the Bankruptcy Code. Accordingly, Section 1129(e) of the Bankruptcy Code is inapplicable to this Chapter 11 case.

HH.     Assumption and Rejection of Contracts. Article VII of the Plan, governing the assumption and assignment or rejection of executory contracts and unexpired leases, satisfies the requirements of Sections 365(a), 365(b), and 365(f) of the Bankruptcy Code.

II.     Section 1125(e) – Good Faith Solicitation. The Plan Proponent has complied with Section 1125(e) in transmitting the solicitation materials and soliciting and tabulating votes and, as applicable, consent forms.


It is therefore **ORDERED AND ADJUDGED** that:


1.  The Plan, attached hereto as **EXHIBIT A**, is **CONFIRMED** and **APPROVED** in all respects.

2. <u>Findings and Conclusions</u>. The Findings of Fact and Conclusions of Law set forth above constitute the findings of fact and conclusions of law of this Court pursuant to Federal Rule of Civil Procedure 52(a)(1), as incorporated by Bankruptcy Rule 7052. To the extent any finding of fact is later determined to be a conclusion of law, it shall be so deemed, and to the extent any conclusion of law is later determined to be a finding of fact, it shall be so deemed.

3. <u>Notice:</u> Notice was adequate and sufficient under the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, Orders of this Court, and the Due Process Clause of the United States Constitution.

4. <u>Effective Date</u>. The Effective Date of the Plan shall be on the first Business Day that is the 21st day after this Confirmation Order is entered.

5. <u>Binding Effect</u>. The Plan and its provisions shall be binding on the Debtor, the Reorganized Debtor, any entity acquiring or receiving property or a distribution under the Plan, and any creditor of or holder of an Equity Interest in the Debtor, including all governmental entities, whether or not the Claim of such creditor or the Equity Interest of such holder is disallowed, extinguished, or impaired under the Plan, or whether or not such creditor or Equity Interest holder has accepted the Plan.

###

**ORDER PREPARED AND SUBMITTED BY:**

**ROBERT W. RALEY ESQ.**

By: <u>/s/ Robert W. Raley</u>
Robert W. Raley - La. Bar #11082
290 Benton Spur Road
Bossier City, LA 71111
Telephone: 318-747-2230
bankruptcy@robertraleylaw.com

and

**AYRES, SHELTON, WILLIAMS, BENSON & PAINE, LLC**

By: /s/ Curtis R. Shelton
Curtis R. Shelton - La. Bar Roll No. 17137
Suite 1400, Regions Tower
333 Texas Street (71101)
P. O. Box 1764
Shreveport, LA 71166-1764
Telephone: (318) 227-3500
Direct Dial: (318) 227-3306
Facsimile: (318) 227-3806
Cell Phone: (318) 470-9010
E-mail: curtisshelton@arklatexlaw.com

**Attorneys for Gulf South Energy Services, LLC**

**IN THE UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF LOUISIANA SHREVEPORT DIVISION**

| | | |
|---|---|---|
| **In the Matter Of**: | } | |
| | } | Case No.24-10178 |
| Gulf South Energy Services, LLC | } | |
| | } | Chapter 11 |
| **Debtor** | } | |

## DEBTOR'S PLAN OF REORGANIZATION

Gulf South Energy Services, LLC (the "Debtor") proposes the following Modified Plan of Reorganization Dated February 13, 2025 (the "Plan").

## ARTICLE I
## SUMMARY OF THE PLAN

**1.1 Overview of the Plan**: The Plan provides for a reorganization of all liabilities owed by the Debtor, as detailed herein. The Reorganized Debtor, as provided herein, shall be the surviving entity to the Debtor.

**1.2 Payments to Creditors**: The Plan provides for Creditors to be paid as provided in Article V herein from revenues associated with the operations of the Reorganized Debtor's business. All Creditors of the Debtor will be paid as provided herein in accordance with the priority scheme established by the Bankruptcy Code.

## ARTICLE II
## DEFINITIONS, RULES OF INTERPRETATION AND COMPUTATION OF TIME

**2.1 Scope of Definitions**: As used in this Plan, the following terms shall have their respective meanings as set forth below. Unless the context requires otherwise, these definitions shall apply equally to both the singular and plural forms of the terms defined. Unless otherwise defined herein, the terms used in this Plan shall have the meanings ascribed to them in the Bankruptcy Code and the Bankruptcy Rules.

**2.2 Definitions**:

1

Administrative Claim:  Any Claim for payment of any cost or expense of administration of the Chapter 11 Case entitled to priority in accordance with Sections 503(b) and 507(a) of the Bankruptcy Code, including, without limitation, any actual and necessary expenses of preserving the Debtor's Estate and operating its business from and after the Petition Date to and including the Confirmation Date and all allowances of compensation and reimbursement approved by the Court in accordance with the Bankruptcy Code and any fees or charges assessed against the Debtor's Estate under Chapter 11 of the Bankruptcy Code.

Administrative Claim Bar Date: The date that is thirty (30) days after the Confirmation Date.

Allowed Claim or Allowed Interest: Any Claim (a) based on an application of a Professional Person, to the extent such application is approved by Final Order; (b) allowed under this Plan; or (c) proof of which was timely and properly filed, deemed filed under applicable law or by reason of an Order of the Court or, if no proof of claim was filed or Order entered, which has been or hereafter is listed by the Debtor in its schedules filed under Section 521(1) of the Bankruptcy Code as liquidated in amount and not disputed or contingent, provided that a timely filed proof of claim shall supersede any scheduling of such claim, and, in either case, a claim as to which such other applicable period of limitation fixed by the Bankruptcy Code or by an Order of the Court to which (i) no objection has been filed, or, (ii) in the event that an objection has been filed, any objection has been withdrawn pursuant to the provisions of this Plan or has been overruled by a Final Order of the Court.

Allowed Priority Claim: All or that portion of any Priority Claim which is or has become an Allowed Claim.

Allowed Secured Claim: All or that portion of any Secured Claim which is or has become an Allowed Claim.

Avoidance Action: Any and all rights, claims or actions which the Debtor may assert on behalf of the Estate under Chapter 5 of the Bankruptcy Code, including actions under one or more provisions of Sections 542, 544, 545, 546, 547, 548, 549, 550, 551 and/or 553 of the Bankruptcy Code, except to the extent that any such rights, claims, or actions are released or waived in this Plan.

Bankruptcy Code: The Bankruptcy Reform Act of 1978 as amended, and as applicable to this Chapter 11 case, § 101 et seq., Title 11, United States Code.

Bankruptcy Rules: The rules of procedure applicable to cases or proceedings pending before the Court, now existing or as hereafter amended.

Bar Date: The dates set forth in the Debtor's Notice of Chapter 11 Bankruptcy Case, Meeting of Creditors, & Deadline or as superseded by a separate Order, setting the date by which

2

proofs of claim must be filed, or be barred pursuant to Federal Rule of Bankruptcy Procedure 3003. For all creditors other than governmental units, the date shall be May 16, 2024. For a governmental unit, the date shall be 180 days from the Petition Date.

Business Day: Any day on which banks are open to carry on their ordinary commercial banking business in Shreveport, Louisiana.

Cash: Cash, cash equivalents and other readily marketable securities or instruments, including, without limitation, direct obligations of the United States of America, certificates of deposit issued by banks and commercial paper of any entity, including interest earned or accrued thereon, but specifically excluding any collateral consisting of funds in deposit or escrow accounts securing a Secured Claim.

Causes of Action: All accounts, contract rights, general intangibles and all rights, claims and causes of action of any kind, whether legal or equitable, of the Debtor, for affirmative recovery of Cash or other property of the Estate, existing before the Effective Date, including such that have accrued or may thereafter accrue relating to those matters that have occurred on or prior to the Effective Date, whether listed in the Debtor's Schedules (as amended, supplemented and/or modified from time to time), the Disclosure Statement, the Plan, the Confirmation Order, any pleading in this Chapter 11 Case, or any other disclosure, statement, correspondence or communication providing informal notice of such Cause of Action and expressly including any Avoidance Action.

Chapter 11 Case: The Chapter 11 bankruptcy case of Gulf South Energy Services, LLC, Case Number 24-10178, United States Bankruptcy Court for the Western District of Louisiana, Shreveport Division, filed February 16, 2024.

Claim: Any right against the Debtor to (a) payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured, or (b) an equitable remedy for a breach of performance if the breach would give rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

Claims Objection Deadline: The date by which parties authorized by the Plan may file objections to Claims, which date shall be ninety (90) days after the Effective Date, except with respect to Administrative Claims, which deadlines are further specified in Plan.

Collateral: Property in which the Debtor has an interest that secures, in whole or in part, payment of an Allowed Secured Claim.

Confirmation: Confirmation means the entry of an Order of the Bankruptcy Court confirming this Plan.

Confirmation Date: The date of entry of the Confirmation Order in accordance with the provisions of the Bankruptcy Code; provided, however, that if the Confirmation Order or consummation of the Plan is stayed pending appeal, then the Confirmation Date shall be the date of entry of the Final Order vacating such stay or the date on which such stay expires or is no longer in effect.

Confirmation Hearing: The date set by the Court to consider confirmation of the Plan pursuant to Section 1129 of the Bankruptcy Code.

Confirmation Order: Order of the Court confirming the Plan and approving the transactions contemplated herein.

Contingent Claim: Any Claim listed in the Debtor's schedules that is listed as "contingent."

Court: The United States Bankruptcy Court for the Western District of Louisiana or such other Court as may have jurisdiction of the Chapter 11 Case.

Creditor: Any entity that is the Holder of a Claim or an interest, including, but not limited to: (a) a Claim that arose on or before the Petition Date; (b) an interest that arose on or before the Petition Date; (c) a Claim against the Debtor's Estate of any kind specified in Section 502(g), Section 502(h), or Section 502(i) of the Bankruptcy Code; or (d) an Administrative Claim.

Debtor: Gulf South Energy Services, LLC.

Disclosure Statement: The written Disclosure Statement filed and served with respect to this Plan, as approved by the Court pursuant to Section 1125 of the Bankruptcy Code.

Disputed Claim: Any Claim or interest to which an objection has been interposed in accordance with the Bankruptcy Code, Bankruptcy Rules, this Plan or orders of the Court.

Effective Date: The effective date of this Plan is the first business day following the date that is 21 days after the entry of the confirmation order. However, a stay of the confirmation order is in effect on that date, the effective date will be the first business day after the date on which the stay expires or is otherwise terminated. The occurrence of the Effective Date shall not alter the meaning of "substantial consummation" as that term is defined in Section 1101(2) of the Bankruptcy Code.

Estate: The estate created in the Chapter 11 Case pursuant to Section 541 of the Bankruptcy Code.

Event of Default: Notwithstanding any provision to the contrary, a "Default" shall occur under the following conditions: The Debtor's failure to adhere to any material term or condition

4

set forth in the Confirmed Plan; and If such failure is not rectified within a thirty (30) day period following receipt of written or electronic notification of such failure. The written or electronic notification must be issued by a Creditor or Claimant directly to the Reorganized Debtor. Notifications should be addressed to the attention of: Todd Davis, at 1843 Grimmett Dr., Shreveport, LA 71101, or alternatively, via email at tdavis@gsesllc.com, **and** to Robert W. Raley, Esq., at 290 Benton Spur Rd., Bossier City, LA 71111, or alternatively, via email at bankruptcy@robertraleylaw.com. For purposes of this provision, the date on which the notice is received by the Reorganized Debtor shall be deemed the commencement date of the thirty (30) day rectification period.

Equity Interest:  An interest in the ownership of the Debtor.

Fee Application:  An application of a Professional Person under Sections 328, 330, 331 or 503 of the Bankruptcy Code for allowance of compensation and reimbursement of expenses in the Chapter 11 Case.

File, Filed, or Filing: Means file, filed or filing with the clerk of the Bankruptcy Court, or its authorized designee in the Chapter 11 Case.

Final Order: An order or a judgment which has not been reversed, stayed, modified, or amended, and as to which (i) the time to appeal or seek reargument, rehearing, or review has expired without any pending appeals or petitions for certiorari, review, or rehearing; or (ii) any appeal, review, reargument, rehearing, or certiorari has been denied and the time to seek further appeal, review, reargument, rehearing, or certiorari has expired, as a result of which such order or judgment shall have become final and nonappealable in accordance with applicable law.

Holder or Claimholder: Any entity that is the holder of a Claim, including, but not limited to, (a) a Claim that arose on or before the Petition Date; (b) a Claim against the Debtor's Estate of any kind specified in Section 502(g), Section 502(h), or Section 502(i) of the Bankruptcy Code; or (c) an Administrative Claim.

Impaired: When used with respect to any Claim, interest or class, "impaired" has the same meaning as that contained in Section 1124 of the Bankruptcy Code.

Interest Holder:  Any person, or entity, holding an Equity Interest in the Debtor as of the Petition Date.

Net Cash Flow: The Debtor's net revenues after operating expenses and secured debt service.

Order: An order or judgment of the Bankruptcy Court as entered on the docket for this bankruptcy case.

Petition Date: February 16, 2024.

Plan: The Plan proposed by the Debtor, either in its present form or as it may be amended or modified.

Priority Claims: Allowed Claim entitled to a priority under, inter alia, Section 507(a) of the Bankruptcy Code.

Priority Tax Claim: Any Claim that is entitled to priority in payment under Section 507(a)(8) of the Bankruptcy Code.

Pro Rata: Means proportionately, so that the ratio of the amount of consideration distributed on account of a particular Allowed Claim to the amount of the Allowed Claim is the same as the ratio of the amount of consideration distributed on account of all Allowed Claims of the class to which the particular Allowed Claim belongs, to the amount of all Allowed Claims of that class.

Professional Claim: A Claim that is filed by a Professional Person pursuant to Sections 327, 328, 330, 331, 503(b) or 1103 of the Bankruptcy Code.

Professional Claim Bar Date:  Means the date that is sixty (60) days after the Effective Date.

Professional Person: Any entity retained or to be compensated pursuant to Sections 326, 327, 328, 330, 331, 503(b) or 1103 of the Bankruptcy Code

Property: The Debtor does not own any immovable property. Therefore, any reference to property pertains solely to movable property.

Reorganized Debtor: The legal entity that shall survive the Debtor as of the Confirmation Date.

Secured Claim: A Claim of a Creditor arising on or before the Petition Date to the extent (a) secured by a lien on Collateral, which is not void or avoidable under applicable state and federal law, including the Bankruptcy Code, or (b) subject to set off under Section 553 of the Bankruptcy Code, in each case to the extent of the value of said Creditor's interest in the Debtor's interests in the property or the amount of the set off, as applicable. Provided, however, that nothing herein shall prohibit a Secured Creditor from making the election provided in Section 1111(b)(2) of the Bankruptcy Code.

Secured Creditor:  Any Creditor that is the Holder of a Secured Claim.

Taxing Authorities: The Internal Revenue Service, the City of Shreveport, Caddo Parish, Louisiana Department of Revenue and any other state or local taxing authority.

Undetermined Claim: A Claim that is (a) a Disputed Claim; (b) a Claim arising through rejection of executory contracts or unexpired leases pursuant to this Plan; (c) an undetermined Administrative Claim in respect of an application by a Professional Person; or (d) a claim that is an Unliquidated or Contingent Claim.

Unliquidated Claim: Any Claim that is listed in the Debtor's schedules as "unliquidated."

Unsecured Claim: Any claim against the Debtor whatsoever, other than 1) a Secured Claim, or 2) a Claim that is entitled to priority pursuant to the Bankruptcy Code.

**2.3  Rules of Interpretation**: For purposes of this Plan, (i) any reference in the Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (ii) any reference in the Plan to an existing document or exhibit Filed or to be Filed means such document or exhibit as it may have been or may be amended, modified, or supplemented as permitted herein; (iii) the words "herein," "hereto" and "hereof" refer to the Plan in its entirety rather than to a particular portion of the Plan; and (iv) the rules of construction set forth in Section 502 of the Bankruptcy Code and in the Bankruptcy Rules shall apply.

**2.4  Computation of Time**: In computing any period of time prescribed or allowed in this Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

**2.5  Exhibits and Plan Supplement**:  All exhibits are incorporated into and are a part of the Plan as if set forth in full herein. Holders of Claims and Interests may obtain a copy of the filed exhibits by sending an email request to bankruptcy@robertraleylaw.com. Upon their filing, the exhibits may be inspected in the office of the clerk of the Bankruptcy Court or at the Bankruptcy Court's CM/ECF or PACER website. Moreover, all pleadings, documents, exhibits, or plan supplements referred to in this Plan may be viewed and printed by logging on to PACER at www.lawb.uscourts.gov. To obtain a password, you may register at http://pacer.psc.uscourts.gov or call the PACER Service Center at 1-800-676-6856. The documents contained in the exhibits shall be approved by the Bankruptcy Court pursuant to the Confirmation Order. The Debtor expressly reserves the right to modify or make additions to or subtractions from any exhibit or to the Plan and to amend, modify, or supplement any exhibit to the Plan in conformance with the provisions of this Plan.

**ARTICLE III**
<u>**DESIGNATION OF CLASSES OF CLAIMS**</u>

    **3.1** <u>**Designation of Classes of Claims**</u>: A Claim is classified in a particular Class only to the extent that the Claim qualifies within the description of that Class and is classified in a different Class to the extent that any remainder of the Claim qualifies within the description of such different Class. A Claim is in a particular Class only to the extent that the Claim is an Allowed Claim in that Class and has not been paid, released, or otherwise satisfied before the Effective Date.

    **3.2** <u>**Unclassified Claims**</u>:

(i) Allowed Administrative Claims (Unimpaired)

(i) Allowed Priority Tax Claims (Unimpaired)

    **3.3** <u>**Classified Claims and Interests**</u>:

| | |
|---|---|
| Class 1: | Secured Claim of the United States Small Business Administration; |
| Class 2: | Secured Claim of Ally Financial [Claim No. 14]; |
| Class 3: | Secured Claim of Ally Financial [Claim No. 11]; |
| Class 4: | Secured Claim of Ally Financial [Claim No. 10]; |
| Class 5: | Secured Claim of Ally Financial [Claim No. 13]; |
| Class 6: | Secured Claim of b1BANK [Claim No. 22]; |
| Class 7: | Secured Claim of b1BANK [Claim No. 23]; |
| Class 8: | Secured Claim of Bank of Brenham [Claim No. 47]; |
| Class 9: | Secured Claim of Chrysler Financial [Claim No. 30]; |
| Class 10: | Secured Claim of Chrysler Financial [Claim No. 4]; |
| Class 11: | DE Lage Landen Financial, Inc. [Claim No. 42]; |
| Class 12: | DE Lage Landen Financial Services, Inc. [Claim No. 42]; |
| Class 13: | DE Lage Landen Financial Services, Inc. [Schedule D 2.17]; |

8

Class 14:        TXP Capital Note Claim [Claim No. 38];

Class 15:        TXP Capital Factoring Agreement Claim[Claim No. 39];

Class 16         General Unsecured Claims;

Class 17         Equity Interest Holders;

Class 18         NFS Leasing Claim Arising from a Restructured Assumed Lease Agreement;

Class 19         Payments to the United States Trustee;

Class 20         Claim of PCEC Shack, LLC , to the extent allowed [Claim No. 43]

Class 21         Claim of Global Merchant Cash, Inc., to the extent allowed (Class 21):


### ARTICLE IV
### PAYMENT OF ADMINISTRATIVE CLAIMS
### AND EXPENSES AND CERTAIN PRIORITY CLAIMS

**4.1    Administrative Claim Applications and Deadline**: Holders of Administrative Claims, including Professional Claims, other than: (a) Allowed Administrative Claims as of the Effective Date; (b) Administrative Claims that represent liabilities incurred on or after the Petition Date, but prior to the Effective Date, in the ordinary course of the Debtor's business, which may be paid in the ordinary course of the Debtor's business without an order of the Bankruptcy Court; and (c) Administrative Claims that constitute fees or charges assessed against the Estate under Chapter 123, Title 28, United States Code, must, by no later than the Administrative Claim Bar Date: (i) file an application with the Bankruptcy Court for allowance of the Administrative Claim; and (ii) serve a copy of such application on the Debtor, the United States Trustee, and all other parties entitled to notice thereof. Failure to file and serve such application by the Administrative Claim Bar Date or Professional Claim Bar Date, whichever is applicable, shall result in the Administrative Claim being forever barred and discharged. Except as specifically provided in the Plan, nothing in this Plan alters the law applicable to, and governing, the allowance of Administrative Claims (including Professional Claims) under the Bankruptcy Code.

**4.2    Treatment of Administrative Claims**:  Except to the extent that the Debtor and the Holder of an Administrative Claim may otherwise agree in writing, Administrative Claims that are Allowed Claims prior to the Effective Date of the Plan shall be paid in full on or before the Effective Date of the Plan. Administrative Claims that become Allowed Claims after the Effective Date of the Plan shall be paid in full in cash within ten (10) business days following the date the Administrative Claim becomes an Allowed Claim by Final Order of the Bankruptcy Court.

9

**4.3  Treatment of Professional Claims**:  Professional Claims become Allowed the same as Administrative Claims in this Article (Section 4.1) and are treated the same as Administrative Claims in this Article (Section 4.2), except that: (i) a Professional Claim that has been previously Allowed on a final (not interim) basis by Final Order of the Bankruptcy Court is not subject to the requirement of filing an application as provided in Section 4.1; (ii) a Professional Claim that has been Allowed on an interim basis (not final) in whole or in part, shall, with respect to being Allowed on a final basis, be subject to the filing of an application for its allowance as provided in Section 4.1, but shall file such application by the Professional Claims Bar Date (as opposed to the Administrative Claim Bar Date) and shall be subject to such laws, rules, and procedures as would be otherwise applicable to the same outside of this Plan; (iii) a Professional Claim that has been previously Allowed and paid on a final basis by Final Order of the Bankruptcy Court, but subject to disgorgement in the event of administrative insolvency, shall cease being subject to said disgorgement ten (10) days after the Professional Claims Bar Date unless, upon motion and notice, the Bankruptcy Court extends such period; (iv) any interim payments on account of a Professional Claim shall be credited against the payment of the final Allowed amount of such Professional Claim; and (v) any retainer provided on account of a Professional Claim may be credited and applied against the payment of the final Allowed amount of such Professional Claim once such Professional Claim is Allowed on a final basis.

**4.4  Post-Confirmation Fees and Expenses**: Upon the Confirmation Date, any requirement that Professionals comply with Bankruptcy Code sections 327 through 331 and 1103 in seeking retention or compensation for services rendered after such date shall terminate, and the Reorganized Debtor may employ and pay any professional for services rendered or expenses incurred after the Confirmation Date in the ordinary course of business without any further notice to any party or action (including, without limitation, the need to file a fee application), order, or approval of the Bankruptcy Court.

**4.5  Priority Tax Claims**:  Priority Tax Claims shall be paid by the Reorganized Debtor, up to the Allowed amount of such Claim, plus interest at the rate of 4.25% per annum, accrued thereon on a quarterly basis on April 1, July 1, October 1 and January 1 of each year over a period not exceeding five (5) years after the date of the order for relief, as provided in § 1129(a)(9)(C) of the Bankruptcy Code, commencing after the first full quarter following the Effective Date. If the Reorganized Debtor fails to make a payment owed on an Allowed Priority Tax Claim pursuant to the terms of the Plan, it shall be deemed an Event of Default. In the event of a default with respect to an Allowed Priority Tax Claim, the Holder of the Priority Tax Claim shall notify the Reorganized Debtor by sending (i) an email notice to tdavis@gsesllc.com, and (ii) a written notification via first-class mail, postage prepaid, to the Reorganized Debtor, Gulf South Energy Services LLC, 1843 Grimmett Dr., Shreveport, LA 71107. The Reorganized Debtor shall have thirty (30) days from the date the written notification is received to cure the event of default in full, or the Holder of the Allowed Priority Tax Claim may: (a) enforce the entire amount of its claim; (b) exercise any and all rights and remedies under applicable non-bankruptcy law; and (c) seek such relief as may be appropriate in the Bankruptcy Court.

10

**ARTICLE V**
**TREATMENT OF CLASSES OF CLAIMS AND INTERESTS**

**5.1 Secured Claim of the United States Small Business Administration (Class 1):**

5.1.1  Composition of Class 1: Class 1 shall consist of the Allowed Secured Claim of the United States Small Business Administration scheduled as creditor number 2.2 on Debtor's Schedule D.

5.1.2 Claim Amount and Payment Terms: The United States Small Business Administration holds a Secured Claim in the allowed amount of $157,701. This obligation shall be amortized through three hundred thirty-nine (339) monthly installment payments, each amounting to seven hundred fifty-four dollars and ninety-eight cents ($754.98), resuming the terms of the original agreement. These payments include interest accrued at an annual rate of 3.75%. Interest accrual and payments shall commence on the 15th day of the first full month following the Plan's Effective Date.

5.1.3 Retention of Liens: The United States Small Business Administration shall retain its existing lien, which shall remain in full force and effect until the total amount specified under the Plan has been paid in full.

5.1.4 Impairment of Claim: The Class 1 Secured Claim of the United States Small Business Administration is classified as Impaired under the Plan.

**5.2  Secured Claim of Ally Financial (Class 2):**

5.2.1  Composition of Class 2: Class 2 shall consist of the Allowed Secured Claim of Ally Financial as set forth in Claim No. 14.

5.2.2  Claim Amount and Payment Terms: The Allowed Secured Claim of Ally Financial is in the amount of $47,050. During the postpetition but preconfirmation period of this Chapter 11 case, the collateral securing this claim was totaled. As a result, the claim was paid in full from insurance proceeds during the case's administrative period. Accordingly, no further payments will be made on this claim under the Plan.

5.2.3  Impairment of Claim: The Class 2 Secured Claim of Ally Financial is classified as Impaired under the Plan.

**5.3  Secured Claim of Ally Financial (Class 3):**

5.3.1 <u>Composition of Class 3</u>: Class 3 shall consist of the Allowed Secured Claim of Ally Financial as set forth in Claim No. 11.

5.3.2 <u>Claim Amount and Payment Terms</u>: Ally Financial holds a Secured Claim in the allowed amount of $47,500. This claim shall be amortized through sixty (60) monthly installment payments, each amounting to $963.13. These payments include interest accrued at an annual rate of 8%. Interest accrual and payments shall commence on the 15th day of the first full month following the Plan's Effective Date.

5.3.3 <u>Adequate Protection Payments</u>: On May 17, 2424, the Court entered an agreed order of adequate protection (Docket No. 131), authorizing and requiring the Debtor to make adequate protection payments to the secured creditor in the amount of $538.44 per month, beginning on June 5, 2024. These payments shall continue through the month immediately preceding the 15th day of the first full month following the Plan's Effective Date. The adequate protection payments will be applied to reduce the principal balance, and the number and amount of the final payment or payments under the Plan will be adjusted accordingly.

5.3.4 <u>Retention of Liens</u>: Ally Financial shall retain its existing lien on a Ford Truck, VIN number ending in 5765, which shall remain in full force and effect until the total payment amount provided under the Plan has been paid in full.

5.3.5  <u>Impairment of Claim</u>: The Class 3 Secured Claim of Ally Financial is classified as Impaired under the Plan.

**5.4  Secured Claim of Ally Financial (Class 4):**

5.4.1  <u>Composition of Class 4</u>: Class shall consist of the Allowed Secured Claim of Ally Financial as set forth in Claim No. 10.

5.4.2  <u>Claim Amount and Payment Terms</u>: Ally Financial holds a Secured Claim in the allowed amount of $52,748.56. This claim shall be amortized through sixty (60) monthly installment payments, each amounting to $1069.55. These payments include interest accrued at an annual rate of 8%. Interest accrual and payments shall commence on the 15th day of the first full month following the Plan's Effective Date.

5.4.3  <u>Retention of Liens</u>: Ally Financial shall retain its existing lien on a Ford Truck, VIN number ending in 1897, which shall remain in full force and effect until the total payment amount provided under the Plan has been paid in full.

5.4.4  <u>Impairment of Claim</u>: The Class 4 Secured Claim of Ally Financial is classified as Impaired under the Plan.

**5.5  Secured Claim of Ally Financial (Class 5):**

5.5.1  <u>Composition of Class 5</u>: Class 5 shall consist of the Allowed Secured Claim of Ally Financial as set forth in Claim No. 13.

5.5.2  <u>Claim Amount and Payment Terms</u>: Ally Financial holds a Secured Claim in the allowed amount of $7,913.50. This claim shall be amortized through sixty (60) monthly installment payments, each amounting to $160.46. These payments include interest accrued at an annual rate of 8%.  Interest accrual and payments shall commence on the 15th day of the first full month following the Plan's Effective Date.

5.5.3  <u>Retention of Liens</u>: Ally Financial shall retain its existing lien on a Ford Explorer, VIN number ending in 6792, which shall remain in full force and effect until the total payment amount provided under the Plan has been paid in full.

5.5.4  <u>Impairment of Claim</u>: The Class 5 Secured Claim of Ally Financial is classified as impaired under the Plan.

**5.6  Secured Claim of b1BANK (Class 6)**:

5.6.1  <u>Composition of Class 6</u>: Class 6 shall consist of the Allowed Secured Claim of b1BANK as delineated in Claim No. 22. This claim originates from (a) a Promissory Note dated July 15, 2020, executed by the Debtor and made payable to b1BANK, and (b) a Business Loan Agreement (BLA) dated July 15, 2020. These instruments are comprehensively detailed in Claim No. 22 along with all supporting documentation submitted.

5.6.2  <u>Claim Amount and Payment Terms</u>: b1BANK holds an allowed, fully secured claim (Claim No. 22) in the amount of One Million Seven Hundred Seventy Thousand Seven Hundred Fifty-Five and 25/100 Dollars ($1,770,755.25). This claim shall be satisfied through 60 monthly installment payments of approximately $35,904.43, inclusive of interest at an annual rate of 8%, resulting in a total payment of approximately $2,154,265.82. Payments shall commence on the 15th day of the first full month following the Effective Date of the Plan.

5.6.3  <u>Retention of Liens</u>: b1BANK shall retain its existing liens, pursuant to, inter alia, the Commercial Security Agreements dated October 30, 2018; September 9, 2019; December 8, 2020; January 15, 2021; January 25, 2021; February 5, 2021; March 23, 2021; June 25, 2021; December 13, 2021; and February 9, 2022 (collectively referred to as the "CSAs"). These Commercial Security Agreements ("CSAs"), executed by the Debtor, are integrated through cross-collateralization agreements, establishing that all of b1Bank's collateral secures all claims asserted by b1Bank against the Debtor. Copies of the CSAs are attached collectively to Claim No. 22. The CSAs shall remain in full force and effect until the total payment amount stipulated in the Plan has been fully satisfied.

13

EXHIBIT A

5.6.4 <u>Adequate Protection</u>: The Plan provides for the payment of creditors as specified in Plan Article V, utilizing revenues from the operations of the Reorganized Debtor's business and following the priority scheme established under the Bankruptcy Code. In the event of a shortfall in Net Revenue that prevents the Reorganized Debtor from making full scheduled monthly payments to b1BANK and other Secured Creditors with liens subordinate to b1BANK's liens, the Reorganized Debtor shall, to provide adequate protection, prioritize the payment of principal and interest to b1BANK over the scheduled payments to other Secured Creditors with inferior liens. During any period of monthly payment shortfall, Subordinate Secured Creditors shall receive monthly adequate protection in the form of interest-only payments on their respective secured claims.

5.6.5 <u>Event of Default</u>: The following definition of "Event of Default" shall govern b1 Bank's Class 6 and Class 7 Claims under the Plan. This definition is more favorable to the Debtor and other creditors than the general definition of "Event of Default" provided in the Plan with respect to the Class 6 and Class 7 Claims of b1 Bank, which are secured by first-ranking liens on the majority of the Debtor's equipment:

In the event the Debtor is not able to make the full amount of plan payments to b1B on account of its Class 6 and Class 7 Claims under the Plan for a period of 90 consecutive days during the 60 month period under the Plan that it obligates the Debtor to pay b1B's Class 6 and Class 7 Claims in full, at b1B's option, in its sole discretion, over a period of not more than 120 days from the date that b1B exercises the option, the Debtor shall sell all or a sufficient number of items of its equipment on which b1B has first-ranking liens to pay the balance of b1B's Class 6 and Class 7 Claims in full. After that 120-day period, b1B will have the option to (a) continue to allow the Debtor to sell enough of its equipment on which b1B has first ranking liens to pay the balance of b1B's Class 6 and 7 Claims or (b) have the Debtor's equipment on which b1B has first-ranking liens sold at public auction by an auction company of b1B's choice. For any private or public sale of any of the Debtor's equipment on which b1B has first-ranking liens, sufficient advance notice must be given to any holders of inferior liens on such equipment. Provided the Debtor has not defaulted under this provision after having made 36 monthly payments of principal and interest on account of b1B's Class 6 and Class 7 Claims, then this provision will no longer be effective during the last 2 years (24 months) the Debtor is obligated to pay b1B's Class 6 and Class 7 Claims under the Plan.

Notwithstanding anything to the contrary in this Plan, except as specifically modified by this Plan, the terms and conditions of b1B's loan documents, including without limitation those that it attached to or referred to in the proofs of claims it filed in the Debtor's case, Claims 22 and 23, and any guaranty agreements signed by anyone to guarantee the Debtor's indebtedness to b1B, shall remain in full force and effect.

5.6.6 <u>Impairment of Claim</u>: The Class 6 Secured Claim of B1BANK is classified as Impaired under the Plan.

14

24-10178 - #280  File 02/14/25  Enter 02/14/25 10:35:32  Main Document   Pg 22 of 42

**5.7 Secured Claim of b1BANK (Class 7)**:

5.7.1 <u>Composition of Class 7</u>: Class 7 shall consist of the Allowed Secured Claim of b1BANK as set forth in Claim No. 23.

5.7.2 <u>Claim Amount and Payment Terms</u>: b1BANK holds a Secured Claim in the allowed amount of $429,289.86. This claim will be paid through monthly installment payments of $8,704.45, inclusive of interest at an annual rate of 8%. Interest accrual and payments shall commence on the 15th day of the first full month following the Plan's Effective Date.

5.7.3 <u>Retention of Liens</u>: b1BANK shall retain its existing liens, pursuant to, inter alia, the Commercial Security Agreements dated October 30, 2018; September 9, 2019; December 8, 2020; January 15, 2021; January 25, 2021; February 5, 2021; March 23, 2021; June 25, 2021; December 13, 2021; and February 9, 2022 (collectively referred to as the "CSAs"). These Commercial Security Agreements ("CSAs"), executed by the Debtor, are integrated through cross-collateralization agreements, establishing that all of b1Bank's collateral secures all claims asserted by b1Bank against the Debtor. Copies of the CSAs are attached collectively to Claim No. 23. The CSAs shall remain in full force and effect until the total payment amount stipulated in the Plan has been fully satisfied.

5.7.4 <u>Adequate Protection</u>: The Plan provides for the payment of creditors as specified in Plan Article V, utilizing revenues from the operations of the Reorganized Debtor's business and following the priority scheme established under the Bankruptcy Code. In the event of a shortfall in Net Revenue that prevents the Reorganized Debtor from making full scheduled monthly payments to b1BANK and other Secured Creditors with liens subordinate to b1BANK's liens, the Reorganized Debtor shall, to provide adequate protection, prioritize the payment of principal and interest to b1BANK over the scheduled payments to other Secured Creditors with inferior liens. During any period of monthly payment shortfall, Subordinate Secured Creditors shall receive monthly adequate protection in the form of interest-only payments on their respective secured claims.

5.7.5 <u>Event of Default</u>: The following definition of "Event of Default" shall govern b1 Bank's Class 6 and Class 7 Claims under the Plan. This definition is more favorable to the Debtor and other creditors than the definition of "Event of Default" provided in the Plan with respect to the Class 6 and Class 7 Claims of b1 Bank, which are secured by first-ranking liens on the majority of the Debtor's equipment:

In the event the Debtor is not able to make the full amount of plan payments to b1B on account of its Class 6 and Class 7 Claims under the Plan for a period of 90 consecutive days during the 60 month period under the Plan that it obligates the Debtor to pay b1B's Class 6 and Class 7 Claims in full, at b1B's option, in its sole discretion, over a period of not more than 120 days from the date that b1B exercises the option, the Debtor shall sell all or a sufficient number of items of

15

its equipment on which b1B has first-ranking liens to pay the balance of b1B's Class 6 and Class 7 Claims in full. After that 120-day period, b1B will have the option to (a) continue to allow the Debtor to sell enough of its equipment on which b1B has first ranking liens to pay the balance of b1B's Class 6 and 7 Claims or (b) have the Debtor's equipment on which b1B has first-ranking liens sold at public auction by an auction company of b1B's choice. For any private or public sale of any of the Debtor's equipment on which b1B has first-ranking liens, sufficient advance notice must be given to any holders of inferior liens on such equipment. Provided the Debtor has not defaulted under this provision after having made 36 monthly payments of principal and interest on account of b1B's Class 6 and Class 7 Claims, then this provision will no longer be effective during the last 2 years (24 months) the Debtor is obligated to pay b1B's Class 6 and Class 7 Claims under the Plan.

Notwithstanding anything to the contrary in this Plan, except as specifically modified by this Plan, the terms and conditions of b1B's loan documents, including without limitation those that it attached to or referred to in the proofs of claims it filed in the Debtor's case, Claims 22 and 23, and any guaranty agreements signed by anyone to guarantee the Debtor's indebtedness to b1B, shall remain in full force and effect.

5.7.6 <u>Impairment of Claim</u>: The Class 7 Secured Claim of b1BANK is classified as Impaired under the Plan.

**5.8 Secured Claim of Bank of Brenham (Class 8)**:

5.8.1 <u>Composition of Class 8</u>: Class 8 consists of the claim of Bank of Brenham, as set forth in Claim No. 47, which was filed as a secured claim in the amount of $1,165,125.17. The Debtor and Bank of Brenham have reached an agreement to settle and resolve their dispute regarding the allowance of Claim No. 47. Pursuant to the settlement, the claim shall be allowed as a secured claim in the amount of $408,962.50, with an unsecured portion of the claim in the amount of $756,162..

5.8.2 <u>Claim Amount and Payment Terms</u>: Bank of Brenham's Secured Claim in the allowed amount of $408,962.50 shall be paid through sixty (60) monthly installment payments, each in the amount of $8,292.28. These payments include interest accrued at an annual rate of 8%. Interest accrual and payments on the Secured Claim shall commence on the 15th day of the first full month following the Plan's Effective Date. The unsecured portion of the claim shall be treated in accordance with the terms applicable to Class 16 under the Plan for general unsecured claims.

<u>Claim and Payment Summary</u>

| Claim Type | Secured Claim | Unsecured Claim | Totals |
|---|---|---|---|
| **Allowed Claim** | $408,962.50 | $756,162.67 | **$1,165,125.17** |
| **Interest Rate** | 8.00% | 0.00% | |

16

| Months | 60 | 96 | |
|---|---|---|---|
| **Monthly Payment** | $8,292.28 | $7,876.69 | |
| **Total Payments** | $497,536.80 | $756,162.24 | **$1,253,699.04** |

5.8.3 <u>Retention of Liens</u>: Bank of Brenham shall retain its existing lien on estate property as described in the Commercial Security Agreement dated April 8, 2022, to the extent that such property exists and is in the possession of the Debtor.

5.8.4 <u>Additional Agreement</u>: The parties will work in good faith to enter into consent judgment(s) on the lawsuit against the guarantors, co-debtors, or sureties pending in the County of Washington, State of Texas. Bank of Brenham's judgment(s) that are obtained against the guarantor(s), co-debtors, or sureties on the debt may be recorded, but Bank of Brenham will not seek to enforce the debt and rights in any collateral so long as there is not a default in payment under the plan that is not cured within thirty (30) days of notice. Bank of Brenham further agrees to withdraw its objection and to support Plan confirmation..

5.8.5 <u>Impairment of Claim</u>: The Class 8 Claim of Bank of Brenham is classified as Impaired under the Plan.

**5.9 Secured Claim of Chrysler Financial (Class 9):**

5.9.1 <u>Composition of Class 9</u>: Class 9 shall consist of the Allowed Secured Claim of Chrysler Financial as set forth in Claim No. 30.

5.9.2 <u>Claim Amount and Payment Terms</u>: Chrysler Financial holds a Secured Claim in the allowed amount of $39,469.93. This claim shall be paid through sixty (60) monthly installment payments, each amounting to $800.31. These payments include interest accrued at an annual rate of 8%. Interest accrual and payments shall commence on the 15th day of the first full month following the Plan's Effective Date.

5.9.3 <u>Adequate Protection Payments</u>: On July 31, 2024, the Court entered an agreed order of adequate protection (Docket No. 174), authorizing and requiring the Debtor to make adequate protection payments to the secured creditor in the amount of $534.98 per month, beginning on July 5, 2024. These payments shall continue through the month immediately preceding the 15th day of the first full month following the Plan's Effective Date. The adequate protection payments will be applied to reduce the principal balance, and the number and amount of the final payment or payments under the Plan will be adjusted accordingly.

5.9.4 <u>Retention of Liens</u>: Chrysler Financial shall retain its existing lien on a 2020 Dodge Ram 2500 truck, which shall remain in full force and effect until the total payment amount provided under the Plan has been paid in full.

5.9.5 <u>Impairment of Claim</u>: The Class 9 Secured Claim of Chrysler Financial is classified as impaired under the Plan.

### 5.10 Secured Claim of Chrysler Financial (Class 10)

5.10.1 <u>Composition of Class 10</u>: Class 10 shall consist of the Allowed Secured Claim of Chrysler Financial as set forth in Claim No. 4.

5.10.2 <u>Claim Amount and Payment Terms</u>: Chrysler Financial holds a Secured Claim in the allowed amount of $42,798.39. This claim shall be paid through sixty (60) monthly installment payments, each amounting to $867.80. These payments include interest accrued at an annual rate of 8%. Interest accrual and payments shall commence on the 15th day of the first full month following the Plan's Effective Date.

5.10.3 <u>Adequate Protection Payments</u>: On July 31, 2024, the Court entered an agreed order of adequate protection (Docket No. 175), authorizing and requiring the Debtor to make adequate protection payments to the secured creditor in the amount of $439.37 per month, beginning on July 5, 2024. These payments shall continue through the month immediately preceding the 15th day of the first full month following the Plan's Effective Date. The adequate protection payments will be applied to reduce the principal balance, and the number and amount of the final payment or payments under the Plan will be adjusted accordingly.

5.10.4 <u>Retention of Liens</u>: Chrysler Financial shall retain its existing lien on a 2020 Dodge Ram 2500 truck, which shall remain in full force and effect until the total payment amount provided under the Plan has been paid in full.

5.10.5 <u>Impairment of Claim</u>: The Class 10 Secured Claim of Chrysler Financial is classified as Impaired under the Plan.

### 5.11 DE Lage Landen Financial, Inc. (Class 11)

5.11.1 <u>Composition of Class 11</u>: Class 11 shall consist of the Allowed Secured Claim of DE Large Landen Financial, Inc., as set forth in Claim No. 42.

5.11.2 <u>Claim Amount and Payment Terms</u>: DE Large Landen Financial, Inc., holds a Secured Claim in the allowed amount of $121,373.49. This claim shall be paid through sixty (60) monthly installment payments, each amounting to $2461.02. These payments include interest accrued at an annual rate of 8%. Interest accrual and payments shall commence on the 15th day of the first full month following the Plan's Effective Date.

5.11.3 <u>Retention of Liens</u>: DE Large Landen Financial, Inc., shall retain its existing lien on a Konecrane SMV 16-1200 Forklift S/M M12454, which shall remain in full force and effect until the total payment amount provided under the Plan has been paid in full.

5.11.4 <u>Impairment of Claim</u>: The Class 11 Secured Claim of DE Large Landen Financial, Inc. is classified as Impaired under the Plan.

### 5.12 DE Lage Landen Financial Services, Inc. (Class 12)

18

5.12.1 <u>Composition of Class 12</u>: Class 12 shall consist of the second Allowed Secured Claim of DE Lage Landen Financial Services, Inc., also as set forth in Claim No. 42.

5.12.2 <u>Claim Amount and Payment Terms</u>: DE Lage Landen Financial Services, Inc., holds a Secured Claim in the allowed amount of $46,336.73. This claim shall be paid through sixty (60) monthly installment payments, each amounting to $939.54. These payments include interest accrued at an annual rate of 8%. Interest accrual and payments shall commence on the 15th day of the first full month following the Plan's Effective Date.

5.12.3 <u>Retention of Liens</u>: DE Lage Landen Financial Services, Inc., shall retain its existing lien on a Konecrane SMV 16-1200 Forklift S/M M12454, which shall remain in full force and effect until the total payment amount provided under the Plan has been paid in full.

5.12.4 <u>Impairment of Claim</u>: The Class 12 Secured Claim of DE Lage Landen Financial Services, Inc., is classified as Impaired under the Plan.

**5.13 DE Lage Landen Financial Services, Inc. (Class 13)**

5.13.1 <u>Composition of Class 13</u>: Class 13 shall consist of the Allowed Secured Claim of DE Lage Landen Financial Services, Inc., scheduled as creditor number 2.17 on Debtor's Schedule D.

5.13.2 <u>Claim Amount and Payment Terms</u>: DE Lage Landen Financial Services, Inc., holds a Secured Claim in the allowed amount of $3657.53. This claim shall be paid through sixty (60) monthly installment payments, each amounting to $74.16. These payments include interest accrued at an annual rate of 8%. Interest accrual and payments shall commence on the 15th day of the first full month following the Plan's Effective Date.

5.13.3 <u>Retention of Liens</u>: DE Lage Landen Financial Services, Inc., shall retain its existing lien on a copier, which shall remain in full force and effect until the total payment amount provided under the Plan has been paid in full.

5.13.4 <u>Impairment of Claim</u>: The Class 14 Secured Claim of DE Lage Landen Financial Services, Inc. is classified as Impaired under the Plan.

**5.14 TXP Capital (Class 14)**

5.14.1 <u>Composition of Class 14</u>: Class 14 shall consist of the Allowed Secured Claim of TXP Capital, LLC, a Texas Limited Liability Company ("TXP Capital"), as set forth in Claim No. 39.

5.14.2 <u>Claim Amount</u>: TXP Capital holds a fully perfected Secured Claim in the allowed amount of $205,465.36. This claim is sometimes referred to as the "Note Claim."

5.14.3 <u>Adequate Protection Order</u>: The Court approved an agreed Adequate Protection Order, entered into the record on July 29, 2024, at Docket No. 176. The Order provides as follows:

Pursuant to the Adequate Protection Order, the Debtor shall make the following payments to TXP: Debtor shall make adequate protection payments to TXP as follows during the pendency of the bankruptcy case until the Debtor confirms its plan of reorganization: two monthly payments of $15,000, two monthly payments of $20,000, and continuing monthly payments of $30,000 thereafter until such time as the Debtor confirms its plan of reorganization. The first monthly payment shall be made on August 5, 2024, and all subsequent adequate protection payments shall be due on the fifth day of each month thereafter until the earlier of the confirmation of a plan of reorganization or further order of the Court.

As of **January 2, 2025**, the principal balance of the **Note Claim** was **$98,850.74**. The debtor shall repay this balance in monthly installments of **$30,000**, commencing on **February 5, 2025**, and continuing on the fifth day of each month through **April 5, 2025**. The final payment, in the amount of **$11,510.32**, shall be due on **May 5, 2025**.

TXP is an oversecured creditor and entitled to recover its attorneys' fees in accordance with § 506(b) of the Bankruptcy Code. Debtor shall pay TXP's reasonable attorneys' fees in the following manner: TXP shall be authorized to apply funds in the Debtor's earned Reserve Account to pay TXP's reasonable attorneys' fees. Debtor may request documentation of all fees incurred and paid through the Reserve Account.

In the event the Debtor fails to timely make an adequate protection payment as required hereunder (a "Payment Default"), TXP may provide notice of such Payment Default to the Debtor by email to Todd Davis, Managing Member, at tdavis@gsesllc.com, or by regular mail at 1843 Grimmett Drive, Shreveport, LA 71107, and to Debtor's counsel by email to Robert W. Raley at bankruptcy@robertraley.com. If the Payment Default is not cured within forty-five (45) days of the notice, the Debtor expressly agrees and stipulates that the automatic stay shall automatically terminate without further order of the Court or notice, and TXP shall be entitled to proceed immediately with enforcement of its rights as a secured creditor in the Collateral securing the Note Claim owed to TXP, as well as the proceeds thereof, pursuant to applicable state law.

5.14.4  Retention of Liens: TXP Capital shall retain its existing lien on the Debtor's reserve account maintained in connection with the Accounts Receivable Purchase and Sale Agreement (the "Purchase Agreement"), originally entered into on November 24, 2020, and subsequently amended on February 22, 2021, as well as its existing lien on the Debtor's flowback equipment. These liens shall remain in full force and effect until the total payment amount provided under the Plan has been paid in full.

5.14.5  Plan Payment Terms: Scheduled payments made prior to the Plan's Effective Date shall be characterized as Adequate Protection Payments. Payments made after the Effective Date shall be characterized as Distributions under the Plan.

5.14.6 <u>Impairment of Claim</u>: The Class 14 Secured Claim of TXP Capital is classified as Impaired under the Plan.

**5.15  TXP Capital (Class 15)**

5.15.1 <u>Composition of Class 15</u>: Class 15 shall consist of the Allowed Secured Claim of TXP Capital, LLC, a Texas Limited Liability Company ("TXP Capital") in connection with the Accounts Receivable Factoring, Purchase and Sale Agreement, as set forth in Claim No. 38.

5.15.2 <u>Claim Amount and Treatment</u>: TXP Capital holds a fully perfected Secured Claim in the allowed amount of $1,065,870.47.

5.15.3 <u>The Purchase Agreement</u>: The Debtor and TXP operated prepetition under an Accounts Receivable Purchase and Sale Agreement (the "Purchase Agreement"), initially entered into on November 24, 2020, and subsequently amended on February 22, 2021.

Postpetition, the Debtor and TXP continued to operate under the Purchase Agreement pursuant to an order entered in the Chapter 11 Case on February 22, 2024, Docket No. 30, authorizing the Debtor to: (i) maintain and continue to operate under the Purchase Agreement in order to sell accounts post-petition to TXP Capital LLC and to incur credit from TXP Capital LLC pursuant to 11 U.S.C. Section 363(b), (c), (f), and (m); (ii) provide TXP Capital LLC with adequate protection in the form of first priority liens and security interests on the property of the Debtor's estate pursuant to 11 U.S.C. Sections 364(c), 364(d)(1), 364(e), and 507; (iii) modify the automatic stay; and (iv) grant related relief nunc pro tunc.

TXP filed Claim No. 38 on May 8, 2024. A copy of the Accounts Receivable Purchase and Sale Agreement is attached to Claim No. 38 as Exhibit A.

Post-confirmation, the Reorganized Debtor and TXP will continue to operate under the Purchase Agreement to, inter alia, sell accounts post-petition to TXP Capital LLC, incur credit from TXP, and ultimately extinguish the outstanding balance through the reconciliation process established in the agreement.

5.15.4 <u>Impairment of Claim</u>: The Class 15 Secured Claim of TXP Capital is classified as Unimpaired under the Plan.

**5.16  General Unsecured Claims (Class 16):**

5.16.1 <u>Composition of Class 16</u>: Class 16 shall consist of all allowed Unsecured Claims that are not otherwise provided for under the Plan.

5.16.2 Claim Amount and Treatment: Class 16 general Unsecured Claims are estimated to total approximately $5,975,982.53. The Reorganized Debtor shall pay 100% of the allowed general Unsecured Claims in approximately 96 installments. Payments shall commence on the 15th day of the fifth full month following the Effective Date of the Plan.

5.16.3 <u>Impairment of Claim</u>: The Class 16 general Unsecured Claims are impaired under the Plan.

**5.17 Equity Interest Holders (Class 17)**:

5.17.1  Class 17 shall consist of Equity Interest Holders. The Class 17 Equity Interest Holders shall retain their Equity Interests in the Reorganized Debtor but will receive nothing additional under the Plan. The Class 17 Equity Interest Holders' votes will not count towards votes tabulated for purposes of any possible cramdown under Section 1129(b).

5.17.2  The Class 17 Equity Interest Holders Claims are unimpaired under the Plan.

**5.18 Claim of NFS Leasing, Inc. (Class 18):**

5.18.1 <u>Composition of Class 18</u>: Class 18 shall consist of the claim of NFS Leasing, Inc. arising from the Lease Agreement dated August 19, 2020, between the Debtor and NFS Leasing, Inc. (the "Lease Agreement"), as restructured and assumed pursuant to the Court's order dated May 15, 2024 (Docket No. 129), with NFS Leasing, Inc. as the lessor.

5.18.2 <u>Claim Amount and Payment Terms</u>: NFS Leasing, Inc., holds a Secured Claim in the allowed amount consistent with the terms set forth in the restructuring order dated May 15, 2024 (Docket No. 129). This claim shall be satisfied by the Debtor making 30 monthly payments, each consisting of $25,401.17 plus Louisiana sales tax at 9.05% ($2,298.81) and a Pass-Through Tracking Fee of $140.46, totaling $27,840.44. These payments shall commence on May 1, 2024, and continue monthly thereafter through the payment due on October 1, 2026.

5.18.3 <u>End-of-Lease Options</u>: Upon the conclusion of the extended initial lease term, the Debtor shall have the option to purchase the leased equipment at an amended fair market value purchase option, not to exceed 15% of the equipment's total sales price, as stipulated in the Lease Agreement.

5.18.4 <u>Retention of Ownership</u>: NFS Leasing, Inc., shall retain its ownership interest in the leased equipment until and unless the Debtor exercises the end-of-lease purchase option. The equipment shall remain the property of NFS Leasing, Inc., under the terms of a true lease, as distinguished from a finance lease, until the full payment amount provided under this Plan is completed, and the Debtor exercises the purchase option.

5.18.5 <u>Impairment of Claim</u>: The Class 18 Secured Claim of NFS Leasing, Inc., is classified as impaired under the Plan.

**5.19  Payments to the United States Trustee**:

The Reorganized Debtor shall be responsible for timely payment of United States Trustee quarterly fees incurred pursuant to 28 U.S.C. 1930(a)(6).  Any fees due as of the date of the Confirmation Hearing will be paid in full on the Effective Date of the Plan. After confirmation, the Reorganized Debtor shall pay United States quarterly fees as they accrue until this case is closed by the Bankruptcy Court. The Reorganized Debtor shall file with the Bankruptcy Court and serve on the United States Trustee a quarterly financial report for each quarter (or portion thereof) that the case remains open in a format prescribed by the United States Trustee.

**5.20  Claim of PCEC Shack, LLC (Class 20):**

5.20.1 <u>Composition of Class 20</u>: Class 20 consists of the claim of PCEC Shack, LLC ("PCEC"), as set forth in Claim No. 43, which was filed as a secured claim in the amount of $806,000.00. The Debtor and PCEC have reached an agreement to settle and resolve their dispute regarding the allowance of Claim No. 43. Pursuant to the settlement, the claim shall be allowed as a fully secured claim in the reduced amount of $706,000.00, with no unsecured portion of the claim.

5.20.2 <u>Claim Amount and Payment Terms</u>: PCEC holds a Secured Claim in the allowed amount of $706,000.00. This claim shall be paid through sixty (60) monthly installment payments, each in the amount of $14,315.13. These payments include interest accrued at an annual rate of 8%. Interest accrual and payments shall commence on the 15th day of the first full month following the Plan's Effective Date.

5.20.3 <u>Retention of Liens</u>: PCEC shall retain its existing blanket lien on all personal property, which shall remain in full force and effect until the total payment amount provided under the Plan has been paid in full.

5.20.4 <u>Impairment of Claim</u>: The Class 20 Secured Claim of PCEC is classified as Impaired under the Plan.

**5.21  Claim of Global Merchant Cash, Inc. (Class 21):**

5.21.1 <u>Composition of Class 21</u>: Class 21 shall consist of the allowed claim of Global Merchant Cash, Inc. ("Global"). Global initially filed Claim No. 29 as a secured claim in the amount of $762,228.79. However, following good faith, arm's-length negotiations, Global and the Debtor have reached a compromise regarding the claim. As a result, Global's claim shall be allowed as an unsecured claim in the reduced amount of $737,228.79, which shall be paid in full (100%) in accordance with the terms applicable to general unsecured claims as provided under Class 16.

5.21.2 <u>Default Remedy</u>: Upon the occurrence of an Event of Default that remains uncured following notice of default as provided in Section 2.2 of the Definitions, Global shall be entitled to pursue its remedies under applicable state law to enforce its compromised claim against the

**Debtor**. This remedy shall be self-operative, and Global shall not be required to seek permission from the Bankruptcy Court to assert its compromised claim against the Debtor.

     5.21.3 <u>Adversary Proceeding</u>: The Debtor has filed an Adversary Proceeding (Adversary Doc. No. 25-01001) seeking the disallowance of Global's claim, a determination of the validity, priority, or extent of Global's lien and claim, or, alternatively, a determination of the amount of the secured claim pursuant to § 506(a) of the Bankruptcy Code, with any remaining unsecured balance to be treated in accordance with the terms applicable to Class 16 under the Plan for general unsecured claims. Pursuant to the compromise reached between the Debtor and Global, and with Global's claim allowed solely as a general unsecured claim in the reduced amount of $737,228.79, the Debtor shall dismiss the Adversary Proceeding with prejudice.

     5.21.4 <u>Releases</u>: In consideration of the agreements set forth in this Plan, the Debtor and the Debtor's estate and their respective successors and assigns hereby waive and release any and all claims and causes of action against GMC under chapter 5 of the Bankruptcy Code or other applicable law related to the claw back of any alleged preferential or fraudulent payments. This provision shall be binding on any future representatives of the Debtor's estate, including, without limitation, any trustee (chapter 7 or otherwise) vested with standing to bring avoidance actions.

     5.21.5 <u>No Other Alteration</u>: Notwithstanding the provisions set forth in Section 5.21 of the Plan, no other provisions of the Plan shall be altered or modified.

     5.21.6 <u>Impairment of Claim</u>: The Class 21 Unsecured Claim of Global is classified as Impaired under the Plan.

**ARTICLE VI**
**<u>MEANS OF IMPLEMENTING THE PLAN</u>**

     **6.1 <u>Continued Operations of Gulf South Energy Services, LLC</u>**: The Reorganized Debtor shall operate as a business managing its commercial activities following the Effective Date. The Reorganized Debtor shall only be required to dedicate sufficient revenues to fund all obligations contained herein.

     **6.2 <u>Post Effective Date Management</u>**: The Reorganized Debtor shall continue to exist as a Limited Liability Company after the Effective Date in accordance with the applicable laws of the State of Louisiana, in which it is organized, for the purposes of operating it business and satisfying its obligations under the Plan. The Reorganized Debtor shall be owned by the Equity Interest Holders upon the Confirmation Order becoming a Final Order. After the Effective Date, the Debtor shall continue to be managed by its managing members, Todd Davis, Dayton Porter, Greg Porter, and Jason Jetton.

**6.3** __Corporate Action__: The entry of the Confirmation Order shall constitute authorization for the Reorganized Debtor to take, or cause to be taken, all corporate actions necessary or appropriate to implement and consummate the Plan on and after the Effective Date. All such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Bankruptcy Court without further approval, act, or action under any applicable law, order, rule, or regulation. The management of the Reorganized Debtor is authorized and directed to do all things necessary, and to execute and deliver all agreements, documents, instruments, notices, and certificates as contemplated by the Plan, and to take all necessary actions required in connection therewith in the name of and on behalf of both the Debtor and the Reorganized Debtor.

**6.4** __Documents__. All documents necessary for the implementation of this Plan shall be executed by all required parties on the Effective Date, unless an earlier date is specified for a particular document or documents under this Plan. To the extent that the parties in interest are unable to agree on the form or substance of such documents, these unresolved issues shall be submitted to the Court for determination. Upon the Effective Date, or as soon as practicable thereafter, the Court shall resolve these issues, and all such documents shall be binding on the Debtor, the Creditors, and all other parties hereto.

**6.5** __Re-Vesting of Assets__: On the Effective Date, except as otherwise provided in this Plan, title to all the Debtor's assets shall vest in the Reorganized Debtor, free and clear of all liens, claims, Causes of Action, interests, security interests, and other encumbrances, and without further order of the Bankruptcy Court. On and after the Effective Date, except as otherwise provided in this Plan, the Reorganized Debtor may operate its business and may use, acquire, and dispose of its assets free from any restrictions of the Bankruptcy Code.

**6.6** __Incorporation of Bankruptcy Rule 9019__: To the extent necessary to effectuate and implement the compromises and releases contained in the Plan, the Plan shall be deemed to constitute a motion under Bankruptcy Rule 9019, seeking the Bankruptcy Court's approval of all the compromises and releases contained herein.

**6.7** __Incorporation of Valuation Motion__: To the extent necessary to effectuate and implement the provisions of this Plan, the Plan shall be deemed to constitute a motion for valuation under the Bankruptcy Code, including valuing any lien, security interest, or encumbrance treated by this Plan; provided, however, that nothing in this Plan shall alter any valuation ordered by a Final Order of the Bankruptcy Court in the Chapter 11 Case.

**6.8** __Automatic Stay__: The automatic stay provided in Section 362 of the Bankruptcy Code shall remain in effect through the Effective Date, unless otherwise specifically modified, annulled, or terminated by the Bankruptcy Court pursuant to a separate order, and shall terminate on the Effective Date.

**6.9 Rights Under 1129(b)**: If any impaired class votes to accept the Plan, but not all classes accept the Plan, the Debtor will seek confirmation under the cram down provisions of Section 1129(b) of the Bankruptcy Code and hereby gives notice of intent to invoke the cram down provisions of Section 1129(b) in that event.

**ARTICLE VII**
**PROVISIONS FOR THE ASSUMPTION AND REJECTION OF**
**EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

**7.1 General Assumption of Executory Contracts**: All executory contracts and unexpired leases of the Debtor (including, but not limited to, those listed on the Debtor's Schedules) that are not expressly rejected on or before ninety (90) days after the Confirmation Date or not otherwise specifically treated in this Plan or in the Confirmation Order shall be deemed to have been assumed on the Confirmation Date. The Bankruptcy Court shall retain jurisdiction to effectuate any post-confirmation assumption and assignment of leases, and such assumption and assignments shall be performed pursuant to Section 365 of the Bankruptcy Code. Each prepetition executory contract and unexpired lease will be assumed only to the extent that any such contract or lease constitutes an executory contract or unexpired lease. Listing a contract or lease as an executory contract or unexpired lease will not constitute an admission by the Debtor, or the Debtor-in-Possession, that such contract or lease is an executory contract or unexpired lease or that any Debtor, or the Debtor-in-Possession, has any liability thereunder. The Confirmation Order shall constitute an Order of the Bankruptcy Court approving the assumption under Section 365 of the Bankruptcy Code as of the Effective Date. The Reorganized Debtor shall continue to have all rights of assignment contained in the for any executory contract or unexpired lease following the Confirmation of this Plan.

**7.2 Cure of Defaults**: Unless otherwise provided for in the Plan, the Reorganized Debtor shall cure all defaults existing under any assumed Executory Contract pursuant to the provisions of Sections 1123(a)(5)(G) and 365(b) of the Bankruptcy Code, by paying the amount, if any, claimed by any party to such Executory Contract as set forth in a proof of claim, which shall be filed with the Court upon the earlier of (a) 30 days after express notice is given of the Debtor's intent to assume such Executory Contract or (b) within sixty (60) days after the Confirmation Date. Such proof of claim shall be titled "Assumption Cure Proof of Claim." Alternatively, the Reorganized Debtor may pay such amount as may be agreed upon between the Reorganized Debtor and any party to such Executory Contract, provided an Assumption Cure Proof of Claim is timely filed within thirty (30) days after the Confirmation Date. Payment of any amount claimed in an Assumption Cure Proof of Claim or otherwise agreed to shall be in full satisfaction, discharge, and cure of all such defaults (including any other Claims filed by any such party as a result of such defaults), provided, however, that if the Reorganized Debtor files, within forty-five (45) days of the filing of an Assumption Cure Proof of Claim, an objection in writing to the amount set forth, the Court shall determine the amount actually due and owing with respect to the defaults or shall approve the settlement of any such Claims. Payment of such Claims shall be

26

made by the Reorganized Debtor on the later of: (i) ten (10) Business Days after the expiration of the forty-five (45) day period for filing an objection to any Assumption Cure Proof of Claim filed pursuant to this section; or (ii) when a timely objection is filed, within ten (10) Business Days after an order of the Court allowing such Claim becomes a Final Order.

**7.3    Claims for Damages**: Any claims based upon rejection of an executory contract or unexpired lease under the Plan must be filed with the Bankruptcy Court and served on the Reorganized Debtor such that they are actually received within thirty (30) days of the entry of an order rejecting such contract or lease. Objections to any such proof of claim shall be filed no later than thirty (30) days after receipt of such claim. The Court shall determine any such objections unless they are otherwise resolved. All allowed claims for rejection damages shall be treated as a Class 17 General Unsecured Claim. Any claim not filed within such time will be forever barred from assertion against the Debtor or its Estate.

**7.4    Reservation of Rights**: The Debtor reserves the right to file applications for the assumption or rejection of any executory contract or unexpired lease at any time up to ninety (90) days after the Confirmation Date.

## Article VIII
## RESOLUTION OF UNDETERMINED CLAIMS

**8.1    Standing**:  In addition to all other parties that may otherwise have standing to object to claims, the Reorganized Debtor shall have specific standing to object to the allowance of said Claims.

**8.2    Effect of Bar Date**: In accordance with Federal Rule of Bankruptcy Procedure 3003(c), any Creditor whose claim was not scheduled, or holds a Contingent Claim, Unliquidated Claim, or Disputed claims, and did not file a proof of claim before the Bar Date, shall not be treated as a Creditor with respect to such claim for purposes of voting or distribution.

**8.3    Amendments to Claims; Claims Filed After the Confirmation Date**: Except as otherwise provided in the Plan, and subject to the Bar Date, a Claim may not be amended after the Confirmation Date without prior authorization of the Bankruptcy Court.  Except as otherwise provided in the Plan, any amended Claim filed with the Bankruptcy Court after the Confirmation Date shall be deemed disallowed in full and expunged without the need for any action by the Reorganized Debtor.  Notwithstanding the foregoing, and for the avoidance of doubt, the holder of a Secured Tax Claim may amend any timely filed proof of claim, where such proof of claim includes an estimated amount for ad valorem taxes, in order to assert actual taxes for said year(s), at any time prior to substantial consummation of the Plan.

**8.4    Objection Deadline**: Within ninety (90) days from the Effective Date, unless extended by Order of the Court after notice and hearing, the Reorganized Debtor may file objections to Claims and Interests with the Court and shall serve a copy of each such objection upon the Holder of the Claim or

Interest to which the objection pertains. Unless arising from an Avoidance Action, any proof of Claim filed after the Effective Date shall be of no force and effect and need not be objected to. Any Undetermined Claim may be litigated to Final Order. The Reorganized Debtor may compromise and settle any Undetermined Claim without the necessity of further notice or approval of the Bankruptcy Court, and Bankruptcy Rule 9019 shall not apply to any settlement of an Undetermined Claim after the Effective Date. Nothing in this Plan extends the Bar Date set in the Chapter 11 Case or grants any Creditor greater rights with respect to a late-filed Claim than such Creditor otherwise has. Unless otherwise ordered by the Court, the Reorganized Debtor shall litigate to judgment, settle, or withdraw objections to contested Claims.

**8.5  Creditor Response to Objection**: With respect to any objection to a Claim when such objection is filed after the Effective Date but otherwise in compliance with this Plan, the Creditor whose Claim was the subject of the objection must file with the Bankruptcy Court and serve a response to the objection upon the Reorganized Debtor and the objecting party no later than thirty (30) days from the date of service of any such objection.  Failure to file and serve such a response within the thirty (30) days shall cause the Bankruptcy Court to enter a default judgment against the non-responding Creditor and thereby grant the relief requested in the objection without further notice to such Creditor.  Any such objection shall contain prominent negative notice language informing the objected-to creditor of the same.

**8.6  No Payment Pending Allowance**: Notwithstanding any other provision in the Plan, if any portion of a Claim is disputed or is an Undetermined Claim, then no payment or distribution hereunder shall be made on account of any portion of such Claim unless and until such Disputed Claim becomes an Allowed Claim.

**8.7  Allowance of Claims**: At the time, and to the extent that an Undetermined Claim becomes an Allowed Claim, such Allowed Claim shall be entitled to such distributions as provided under the Plan.  Such distributions shall be made in the manner provided for by this Plan and the terms of any Final Order of the Court with respect to such Allowed Claim.  In the event that the Reorganized Debtor makes any distributions to Creditors at any time prior to a determination of allowance of an Undetermined Claim, payments on such Undetermined Claim will commence and be due and payable on the first quarterly payment date following the date of the Order allowing such Claim and shall be re-amortized to equal an amount sufficient to fully pay the Allowed Claim.

**8.8  Estimation of Claims**: The Debtor or the Reorganized Debtor may, at any time, request that the Bankruptcy Court estimate any Contingent Claim, Unliquidated Claim, or Disputed Claim pursuant to 11 U.S.C. § 502(c), regardless of whether the Debtor or the Reorganized Debtor previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection. The Bankruptcy Court shall retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including, without limitation, during the pendency of any appeal relating to any such objection. In the event that the Bankruptcy Court estimates an Undetermined Claim, the amount so estimated shall constitute either the allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy

Court. If the estimated amount constitutes a maximum limitation on the amount of such Claim, the Debtor or the Reorganized Debtor may pursue supplementary proceedings to object to the allowance of such Claim. All of the aforementioned objection, estimation, and resolution procedures are intended to be cumulative and not exclusive of one another. Claims may be subsequently estimated, compromised, settled, withdrawn, or resolved by any mechanism approved by the Bankruptcy Court.

### ARTICLE IX
### DISTRIBUTION PROCEDURES

**9.1 Date of Distributions**: Distributions shall be made as specified in Plan Articles IV and V with respect to each Allowed Claim or Allowed Equity Interest. In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day but shall be deemed to have been completed as of the required date.

**9.2 Withholding and Reporting Requirements:** In connection with the Plan and all instruments issued in connection therewith and distributed thereon, any party issuing any instrument or making any distribution under the Plan shall comply with all applicable withholding and reporting requirements imposed by any federal, state, or local taxing authority, and all distributions under the Plan shall be subject to any such withholding or reporting requirements. Notwithstanding the above, each holder of an Allowed Claim that is to receive a distribution under the Plan shall have the sole and exclusive responsibility for the satisfaction and payment of any tax obligations imposed by any Governmental Unit, including income, withholding, and any other tax obligations, on account of such distribution. Any party issuing any instrument or making any distribution under the Plan has the right, but not the obligation, to not make a distribution until such Holder has made arrangements satisfactory to such issuing or disbursing party for payment of any such tax obligations.

**9.3 Unclaimed Distributions**: In the event that any distribution to a Holder is returned as undeliverable, the Reorganized Debtor shall use reasonable efforts to determine the current address of such Holder, but no distribution to such Holder shall be made unless and until the Reorganized Debtor has determined the then-current address of such Holder, at which time such distribution shall be made to such Holder without interest from the original distribution date through the new distribution date; provided that such distributions shall be deemed unclaimed property under Section 347 of the Bankruptcy Code at the expiration of one year from the delivery thereof. After such date, all unclaimed property shall revert to the Reorganized Debtor, and the Claim of any other entity to such property or interest in property shall be discharged and forever barred.

### ARTICLE X
### MODIFICATION OF THE PLAN

**10.1** **Amendments Prior to Confirmation Date:** The Debtor may modify the Plan prior to Confirmation, and the Plan, as amended shall become the new Plan of Reorganization.

**10.2** **Amendments After Confirmation Date**: The Debtor may modify the Plan before its substantial consummation, provided that the Plan, as modified, meets the requirements of the Bankruptcy Code, and the Court, after notice and hearing, confirms this Plan, as modified.

**10.3** **Effect on Claims**: A Holder of a Claim that has accepted or rejected this Plan shall be deemed to have accepted or rejected, as the case may be, this Plan, as modified, unless, within the time fixed by the Court, such Holder changes its previous acceptance or rejection.

## ARTICLE XI
## RETENTION OF JURISDICTION

**11.1** **Purposes**: Notwithstanding entry of the Confirmation Order, this Court shall retain jurisdiction over the Chapter 11 Case for the following purposes:

i.      to determine any and all objections to the allowance of Claims or interests, both before and after the Confirmation Date, including any objections to the classification of any Claim or interest;

ii.      to determine any and all applications for fees and expenses authorized to be paid or reimbursed in accordance with Section 503(b) of the Bankruptcy Code or this Plan;

iii.      to determine any and all pending applications for the assumption or rejection of executory contracts or for the rejection or assumption and assignment, as the case may be, of unexpired leases to which the Debtor is a party or with respect to which it may be liable; to hear and determine any actions to void or terminate unexpired contracts or leases; and to hear and determine and, if need be, to liquidate any and all claims arising therefrom;

iv.      to hear and determine any and all actions initiated by the Reorganized Debtor, whether by motion, complaint or otherwise;

v.      to determine any and all applications, motions, adversary proceedings and contested matters pending before the Court on the Confirmation Date or filed or instituted after the Confirmation Date;

vi.      to modify this Plan, the Disclosure Statement or any document created in connection with this Plan or remedy any defect or omission or reconcile any inconsistency in any Order of the Court, this Plan, the Disclosure Statement or any document created in connection with this Plan, in such manner as may be necessary to carry out the purposes and effects of this Plan to the extent authorized by the Bankruptcy Code;

vii.     to ensure that the distribution is accomplished in accordance with the provisions of this Plan;

viii.     to allow, disallow, determine, liquidate or estimate any Claim or interest and to enter or enforce any Order requiring the filing of any such Claim or interest before a particular date;

ix.     to enter such Orders as may be necessary to interpret, enforce, administer, consummate, implement and effectuate the operative provisions of this Plan, the Confirmation Order and all documents and agreements provided for herein or therein or executed pursuant hereto or thereto including, without limitation, entering appropriate Orders to protect the Debtor from creditor actions;

x.     to hear any other matter not inconsistent with Chapter 11 of the Bankruptcy Code;

xi.     to enter and implement such Orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked or vacated;

xii.     to determine such other matters as may arise in connection with this Plan, the Disclosure Statement or the Confirmation Order;

xiii.     to enforce all Orders, judgments, injunctions, and rulings entered in connection with the Chapter 11 Case;

xiv.     to determine all issues relating to the Claims of the IRS, and other taxing authorities, state or federal;

xv.     to determine any avoidance actions brought pursuant to the provisions of the Bankruptcy Code; and

xvi.     to enter a Final Order and final decree closing the Chapter 11 Case.

**11.2** __Exclusive Jurisdiction__: The Court shall have exclusive jurisdiction to resolve all controversies, suits and disputes that may arise in connection with the interpretation, enforcement, consummation, implementation or administration of this Plan, the Confirmation Order or the Disclosure Statement and all entities shall be enjoined from commencing any legal or equitable action or proceeding with respect to such matters in any other court or administrative or regulatory body.

**11.3** __Abstention__: If the Court abstains from exercising jurisdiction or is otherwise without jurisdiction over any matter arising out of the Chapter 11 Case, including the matters set forth in this Article XI, this Article XI shall have no effect upon and shall not control, prohibit or limit the

31

exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

**ARTICLE XII**
**CAUSES OF ACTION**

**12.1** **Retention of Causes of Action**: All Claims and Causes of Action owned by the Debtor, Causes of Action that could have been brought by a Creditor on behalf of the Debtor, and all Causes of Action created by the Bankruptcy Code not waived or released under the Plan may be pursued by the Reorganized Debtor for the benefit of the Creditors, as provided herein, including, but not limited to Causes of Action arising in and under Chapter 5 of the Bankruptcy Code. The Reorganized Debtor shall have the exclusive right to settle or compromise all such Causes of Action subject to Court approval. Court approval is not required to settle or compromise any collection activities relating to any and all accounts receivable.

**ARTICLE XIII**
**GENERAL PROVISIONS**

**13.1** **Certain Rights Unaffected**: Except as otherwise provided herein, any rights or obligations which the Debtor's Creditors may have among themselves as to their respective Claims or the relative priority or subordination thereof are unaffected by this Plan.

**13.2** **Headings**: The article and section headings used in this Plan are inserted for convenience and reference only and neither constitute a part of this Plan nor in any manner affect the terms, provisions, or interpretations of this Plan.

**13.3** **Severability**: If any term or provision in this Plan is determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any other term or provision of this Plan.

**13.4** **Governing Law**: Except to the extent that the Bankruptcy Code is applicable, the rights and obligations arising under this Plan and any documents, agreements, and instruments executed in connection with this Plan (except to the extent such documents, agreements, and instruments designate otherwise) shall be governed by, and construed and enforced in accordance with, the laws of the State of Louisiana.

**13.5** **Successors and Assigns**: The rights and obligations of any entity named or referred to in this Plan shall be binding upon, and shall inure to the benefit of, the successors and assigns of such entity.

**13.6** **Discharge of Claims**: Except as otherwise provided herein or in the Confirmation Order, the rights afforded in the Plan and the payments and distributions to be made hereunder shall discharge all existing debts and Claims of any kind, nature, or description whatsoever against

32

the Debtor and the Reorganized Debtor or any of its assets or properties to the extent permitted by Section 1141 of the Bankruptcy Code; upon the Effective Date, all existing Claims against the Debtor and the Reorganized Debtor shall be, and shall be deemed to be, discharged; and all Holders of Claims shall be precluded from asserting against the Reorganized Debtor or any of its assets or properties, any other or further Claim based upon any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date, whether or not such Holder filed a proof of claim.

13.7 **Discharge of Debtor**: Except as otherwise provided herein or in the Confirmation Order, any consideration distributed under the Plan shall be in exchange for and in complete satisfaction, discharge, and release of all Claims of any nature whatsoever against the Debtor or any of its assets or properties; and except as otherwise provided herein, upon the Effective Date, the Debtor shall be deemed discharged and released to the extent permitted by Section 1141 of the Bankruptcy Code from any and all Claims, including, but not limited to, demands and liabilities that arose before the Effective Date, whether or not (a) a proof of claim based upon such debt is filed or deemed filed under Section 501 of the Bankruptcy Code; (b) a Claim based upon such debt is allowed under Section 502 of the Bankruptcy Code; or (c) the Holder of the Claim based upon such debt has accepted the Plan. Except as provided herein, the Confirmation Order shall be a judicial determination of discharge of all liabilities of the Debtor. Except as provided herein, pursuant to Section 524 of the Bankruptcy Code, such discharge shall void any judgment against the Debtor at any time obtained to the extent it relates to a Claim discharged and operates as an injunction against the prosecution of any action against the Debtor or the property of the Debtor, to the extent it relates to a Claim discharged.

13.8 **Injunctive Relief**: Except as provided herein, on and after the Confirmation Date, all Creditors and persons acting in concert with them are enjoined and restrained pursuant to Section 105 of the Code from taking any action to collect or enforce any Claim directly or indirectly against the Reorganized Debtor in any manner inconsistent with the terms contained in the Plan. The discharge granted by this Plan avoids any judgment at any time obtained with respect to any debt discharged.

Dated: February 13, 2025

Gulf South Energy Services, LLC

By: /s/Todd Davis
Todd Davis, Managing Member

33

Respectfully submitted,

**ROBERT W. RALEY, ESQ.**

By: /s/ Robert W. Raley
Robert W. Raley - La. Bar No. 11082
290 Benton Spur Road
Bossier City LA 71111
318-747-2230
bankruptcy@robertraleylaw.com
Attorney for Debtor

And

**AYRES, SHELTON, WILLIAMS, BENSON & PAINE, LLC**

By: /s/ Curtis R. Shelton
Curtis R. Shelton - La. Bar Roll No. 17137
Suite 1400, Regions Tower
333 Texas Street (71101)
P.O. Box 1764
Shreveport, LA 71166-1764
Telephone: (318) 227-3500
Facsimile: (318) 227-3806
E-mail: curtisshelton@awsw-law.com
Attorneys for the Debtor

34